(No. 16067.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK LEWIS *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1924.*

1. CRIMINAL LAW—*jury are judges as to weight of testimony.* The jury are judges of the weight to be given to the testimony of the witnesses, and a reviewing court will not substitute its judgment for that of the jury where no prejudicial error has been committed and the verdict does not appear to be the result of passion or prejudice.

2. SAME—*testimony of accomplices should be received with caution.* Where the principal evidence is the testimony of accomplices, unless it is so corroborated by other testimony or circumstances as to prove guilt beyond a reasonable doubt it is subject to suspicion and should be acted upon with great caution, and the record should be free from prejudicial error.

3. SAME—*when conviction must be reversed for misconduct of counsel in cross-examination of defendants.* Where a conviction depends entirely upon the testimony of confessed accomplices and the defendants have set up the defense of an alibi, a conviction must be reversed and the defendants allowed a new trial where counsel

for the State, in cross-examining the defendants, who testified in their own behalf, repeatedly ask improper questions in regard to former indictments and matters wholly foreign to the issue, for the purpose of bringing before the jury insinuations calculated to create prejudice against the defendants.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. CHARLES V. MILES, Judge, presiding.

JAMES P. ST. CERNY, ROBERT SCHOLES, and JOHN E. DOUGHERTY, (GEORGE W. SPRENGER, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, E. E. BLACK, State's Attorney, VIRGIL L. BLANDING, and W. J. REARDON, (THOMAS KENNEDY, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

The night of April 11, 1923, a freight train of the Atchison, Topeka and Santa Fe Railway Company was held up at Crandall, Tazewell county, a car opened and several barrels of alcohol stolen from it. The train carried a combination coach, part of which was for passengers. Crandall is at a crossing of the Lake Erie and Western railroad, about sixteen miles from Pekin. There is a grain elevator and an old unoccupied building at Crandall. There is a "Y" track there for switching cars from one railroad to the other. The alcohol was loaded in the car by the American Distilling Company, in Pekin, about 3:00 o'clock in the afternoon of April 11 and later switched to the track of the Atchison, Topeka and Santa Fe railroad for shipment. The train of fourteen cars, of which the car of alcohol was one, left Pekin at 7:00 P. M. The crew consisted of a conductor, two brakemen, engineer and fireman. An employee of the railroad company whose duty it was to ride the trains for protection of property when alcohol was shipped was aboard the train, also four passen-

gers were aboard when the train left Pekin, and before
reaching Crandall another passenger came aboard. He went
into the passenger compartment of the coach where the other
four passengers were, asked one of them for a match, and
they pulled revolvers on him, searched him and ordered
him back where the train men were, and guarded them.
The robbers took the train-rider's gun from him, and at
Crandall took charge of the train and held it from 8:15
o'clock till 11:30 P. M. Trucks arrived at Crandall about
the time the train did, and the robbers made the crew hold
the train until they unloaded the barrels of alcohol into the
trucks and hauled it away. Frank Lewis, Louis Talbot,
Lee Burton, Edward Achterberg, Eddie Campbell, Sammy
Wade, Gordon Burton, Egnac Vidac, alias Butch Vidac,
and Michael Hearst, alias Mickey Hearst, were indicted
by the grand jury for the crime of burglary and larceny.
Before the trial of plaintiffs in error began, Campbell and
Wade plead guilty. Achterberg and Gordon Burton were
granted separate trials. Hearst was never apprehended.
Lewis, Vidac, Talbot and Lee Burton entered pleas of
not guilty, were tried and a verdict of guilty returned. A
motion for new trial was overruled and the four defend-
ants were sentenced to imprisonment in the penitentiary,
and they have sued out this writ of error.

No one except Campbell and Wade testified positively
to plaintiffs in error being at Crandall and assisting in the
commission of the crime. None of the train crew identi-
fied plaintiffs in error except Lee Burton, and as to him
the identification was not definite and satisfactory. They
said they could not be positive. Each of plaintiffs in error
denied on the witness stand that he was at Crandall when
the crime was committed and denied any connection with it.
One witness testified he met Vidac in the Saratoga pool
room, in Peoria, about 7:30 or 8:00 o'clock the evening
of April 11 and the two of them played pool two hours.
Two night policemen in Pekin testified they saw and talked

with Vidac in a restaurant in Pekin about 11:30 or 12:00 o'clock the night they heard the train was held up. Four witnesses testified Talbot was in McKenzie's confectionery and soft drink parlor from about 7:00 o'clock till 10:30, or later. Four witnesses testified to the whereabouts of Lee Burton the night of April 11, and if their testimony was true he could not have been at Crandall when the crime was committed; and the same is true of the testimony of three witnesses as to Lewis' whereabouts the evening of April 11, if what they testified to is worthy of belief. The testimony of these witnesses for plaintiffs in error and the testimony of Campbell and Wade cannot be reconciled. That of one or the other of the two sets of witnesses was false. The rule of law is, that the jury are the judges of the weight to be given to the testimony of the witnesses, and a reviewing court will not substitute its judgment for that of the jury where no prejudicial error has been committed and the verdict does not appear to be the result of passion and prejudice. Without the testimony of Campbell and Wade the evidence would not have been sufficient to warrant a verdict of guilty. Those two witnesses admitted they helped commit the crime, pleaded guilty, applied for probation, and, as we understand, were at liberty under bail at the time of the trial. Independent of any hope they had that by pleading guilty to the crime of burglary, only, they might be leniently dealt with by the State, (of which there is some evidence,) they admitted they were accomplices of plaintiffs in error in the crime. That fact did not render their testimony incompetent, as we have often held, but where the principal evidence is that of accomplices, unless it is so corroborated by other testimony or circumstances as to prove guilt beyond a reasonable doubt it is subject to suspicion and should be acted upon with great caution. (*People* v. *Rosenberg*, 267 Ill. 202; *Hoyt* v. *People*, 140 id. 588; *Campbell* v. *People*, 159 id. 9; *People* v. *Feinberg*, 237 id. 348; *People* v. *McKinney*, 267 id. 454.) We

do not say whether, in the absence of the conduct of the trial hereafter referred to, the jury would or would not have been warranted in finding a verdict of guilty, but we have concluded that for reasons given hereafter there should be a new trial of this case.

All four of plaintiffs in error testified at the trial and denied having had anything to do with the crime. Each of them claimed he was not present at the place and time of its commission and introduced witnesses to prove his presence elsewhere at the time. Lewis testified that he had known Frank Weber, of Peoria, about ten years; that Weber owned a pool room where he sold soft drinks. The State, on cross-examination, asked Lewis if Weber did not sell some other kinds of drinks and if his place had not been raided by prohibition officers three times within the last year, to which questions the court sustained objections. The State then asked Lewis if he meant to be understood as saying he had known Weber ten years and did not know he operated a soft drink parlor and gambling room in Peoria. The court overruled an objection to the question. Lewis was asked by the State why he had been discharged by the P. & P. U., meaning, as we understand, the Peoria and Pekin Union Terminal Railroad Company. An objection was sustained to the question, and the State then asked if it was not a fact that witness was discharged at the time a number of cars had been burglarized, but the court sustained an objection to the question. Counsel for the State asked the witness where his wife was, to which the court sustained an objection, and then counsel inquired if it was not a fact his wife had been divorced from him and been given the custody of their child, to which objection was sustained.

Vidac testified he went to Peoria about 6:30 o'clock the evening of April 11 and visited the Saratoga pool room and played pool till about 10:30 and then returned to Pekin, where he operated a soft drink parlor. He was then asked

if his place had not been raided twice by Federal officers. An objection to the question was overruled, and Vidac answered it had. He was then asked if he was then under indictment in the Federal court for the unlawful sale of alcohol, and answered he was. He was also asked if he was not under bond in the circuit court of Tazewell county for the unlawful sale of liquor, and answered he was. After he had answered, his counsel objected and moved to have the answers stricken, and the court ordered the same stricken.

On cross-examination Lee Burton was asked who was on his bond, to which the court sustained an objection. Burton testified he had for one year prior to March 1, 1923, been employed by the P. & P. U. as a special agent. He was asked on cross-examination if he had not been discharged because of robberies in the East Peoria yards, and answered he had not. He was then asked if he was not discharged, and said no; he was laid off. Counsel for the State inquired if that was not a gentlemanly way of discharging him, whereupon counsel for the defense objected "to the comments of counsel," and the court sustained the objection. Burton in his testimony spoke of having seen Talbot in Ike McKenzie's place of business. Witness said McKenzie's business was confectionery; he sold candy; witness could not say whether he sold soft drinks; said there was a bar there. He was asked if it was not the same kind of a bar they had in the old saloon, and if the place was not a saloon before the adoption of the eighteenth amendment, and if the furniture was not the same as it was then, to all of which the court sustained objections.

On cross-examination of Talbot the State asked him if he was the same Louis Talbot who was indicted in Peoria county in 1921 for robbing a Standard Oil Company station, to which an objection was sustained. He was also asked if he was not the Lewis Talbot at whose place three barrels of alcohol were found that had been stolen from

the Rock Island depot. An objection was overruled, and witness answered there were three barrels taken from his place—not from the Rock Island Railroad Company; they were taken by Tazewell county officers. He was then asked if he was the same Louis Talbot in whose possession a washing machine was found that had been stolen from an Illinois concern, and answered no. Asked if he had a washing machine he said he had, and he was then asked if the numbers on it had not been so disfigured that it could not be identified. Counsel for the defense then interposed an objection, and it was sustained.

Joseph Day, a witness for Talbot, testified he saw Talbot in Ike McKenzie's place in Peoria the night of April 11. The State then asked the witness, repeating substantially the same question three times in succession, whether he had not, two or three weeks before, been an alibi witness in the Peoria county circuit court for McKenzie's son, to all of which questions the court sustained objections.

Joe Stafford testified for the defense that he saw Talbot in McKenzie's place the night of April 11 from 8:00 till 11:00 o'clock. On cross-examination he was asked if he was present in the Peoria county circuit court three weeks before, at the trial of McKenzie's son. On objection made, the court stated he could not see the point of it, and sustained the objection. Thereupon counsel for the State asked the witness if it was not true he was an alibi witness for McKenzie's son when he was tried for robbing a Standard Oil station in Peoria, and the court again sustained an objection.

In no case we can recall have we ever sustained a conviction which depended principally on the testimony of accomplices where the record shows such improper conduct during the progress of the trial. It does not follow that because a witness was an accomplice his testimony should not be given any weight, but when the principal evidence is the testimony of accomplices, which we have always held

should be received with caution, the record should be fairly free from prejudicial error, and especially so from palpable efforts of the State to prejudice the defendants with the jury by attempting to drag into the case matters wholly foreign and irrelevant. Many questions asked plaintiffs in error and their witnesses on cross-examination had no tendency to prove their guilt of the crime charged, but the only tendency was to prejudice plaintiffs in error with the jury and influence them to return a verdict of guilty on general principles. The State must have known it was not competent to ask plaintiffs in error or witnesses if they had not been indicted for other crimes, or the many other questions, some of which we have set out, which had no tendency to prove the issue being tried. The only effect of such an examination would be to cause the jury to believe plaintiffs in error were bad men and likely to commit such a crime as the indictment charged. Men on trial for a particular crime are not required to defend themselves against every possible insinuation which may be made against them, nor are witnesses to be subjected to every insinuation and aspersion in no way connected with the issue being tried. It was held in *People* v. *Newman,* 261 Ill. 11, that the law does not provide one method for trying innocent persons and another for trying guilty persons. In that case the court said: "The plaintiff in error had a right to a trial by jury on competent evidence and to have his witness appear without any illegal disparagement of his credibility. The question is not what, with the aspersions against the witness wrongfully appearing in the record, we may think of the guilt or innocence of the plaintiff in error, but what would the jury have done if the case had been submitted to them without those aspersions. The rule that a judgment will not be reversed where the evidence clearly establishes the defendant's guilt does not justify the total disregard of the rights of a prisoner upon his trial for an alleged crime. He still has a right to be tried by the law of the land, and

a conviction secured by a trial in total disregard of that law cannot be sustained." The subject has received the consideration of this court in several cases, some of which are *People* v. *Green,* 292 Ill. 351, *People* v. *Decker,* 310 id. 234, *People* v. *Brocamp,* 307 id. 448, *People* v. *King,* 276 id. 138, *People* v. *Reed,* 287 id. 606, and *People* v. *Newman, supra.* It is true, the court sustained objections to most of the improper examination of plaintiffs in error and their witnesses, but the improper examinations occurred too often during the trial and questions were so frequently repeated after objections had been sustained that the only remedy for such conduct, and the only fair treatment of the record, is a reversal of the judgment so that a fair and orderly trial may be had under the law. (*People* v. *Green, supra.*) This court is reluctant to reverse a judgment of conviction in any case, but it should be understood that men charged with a crime are entitled to a fair trial according to law. Where that has been denied them, guilt must be so conclusively proved that no other verdict than one of guilty could reasonably have been returned by the jury to warrant a reviewing court in sustaining the conviction. It is not to be understood that we intend to hold the proof in this case, in the absence of serious prejudicial error, would not warrant a verdict of guilty. What we hold is, that under the state of the record to which we have called attention it is our duty to award plaintiffs in error a new trial, at which they may present their defense to the jury and have its merits, if any, determined free from the influence of improper attempts to go into other matters than the guilt of the accused of the crime charged in the indictment. That was the issue proper to be tried, and the testimony should have been reasonably confined to that issue.

The judgment is reversed and the cause remanded for a new trial. *Reversed and remanded.*