(No. 17287.—Reversed and remanded.)
FERDINAND EMICH, Defendant in Error, *vs.* THE CITIZENS TRUST AND SAVINGS BANK, Plaintiff in Error.

*Opinion filed June 16, 1926.*

1. TRIAL—*persistent misconduct in examination of witnesses will cause reversal.* Where counsel, in the examination of witnesses, has persisted in getting before the jury evidence to which objections have been sustained and which is prejudicial to the defendant, the only remedy is a reversal of the judgment for the plaintiff, so that a fair and orderly trial may be had under the law.

2. NEGLIGENCE—*when instruction directing verdict for plaintiff in action against custodian of safety deposit box is improper.* In an action against a bank to recover the loss of the contents of a safety deposit box, an instruction directing a verdict for the plaintiff if the jury believe, from a preponderance of the evidence, that the defendant was negligent or failed to exercise ordinary care and diligence in the preservation of the plaintiff's property and that the plaintiff was not negligent, is improper, where it does not further require a finding that the defendant's negligence was the proximate cause of the loss.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. F. R. DOVE, Judge, presiding.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for plaintiff in error.

CARPENTER, BARNHARDT & GRANT, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Ferdinand Emich brought an action in case in the circuit court of Cook county against the Citizens Trust and Savings Bank alleging the loss of $7000 in cash and a $100 Liberty bond from his safety deposit box while it was in the custody and control of the defendant. The plaintiff's original declaration contained nine counts, and thereafter he filed numerous amended and additional counts. The case was tried on the second, fourth and ninth original counts, the third and fifth amended counts, and the thirteenth and fourteenth additional counts, the other counts having been held insufficient on demurrer, dismissed by the plaintiff or withdrawn from the consideration of the jury by the court. The second original count charged the defendant with negligently and carelessly managing and operating its vault so that the money and Liberty bond were lost or stolen and wrongfully removed from the plaintiff's box. The fourth original count charged the defendant with negligence in failing to exercise reasonable care in employing only competent, faithful and honest employees, and alleged that by reason of the employment of incompetent, dishonest employees, one or more of the employees stole the money and bond from the plaintiff's box. The ninth original count alleged the duty of the defendant to take care of the property of the plaintiff, and charged the defendant with contriving to deceive and defraud the plaintiff and conducting itself so carelessly that the property became lost. The third amended count set forth the existence of certain rules, namely, that two or more persons were not to be in-

side the vault without an attendant, and that by reason of the violation of said rules the property was lost and carried away. The fifth amended count was a general count of negligence, alleging the duty of the defendant to use reasonable care for the protection of the plaintiff's property, that it failed to exercise reasonable care and negligently and carelessly managed its vault business, as a result of which the property was lost. The thirteenth additional count charged the defendant with the duty to exercise due care in the management of its business and the selection of its employees, but that the defendant had a certain employee who was not competent and honest, which the defendant knew or should have known, as a result of which the plaintiff's property was stolen. The fourteenth additional count charged th'at the defendant knew the plaintiff had the property in his box, and it was therefore its duty to retain honest and capable employees and to discharge dishonest employees, but that the defendant failed to discharge one of its employees who was dishonest, as a result of which the plaintiff's property was stolen from the safety deposit box in the vault or the private booths. The defendant filed the plea of the general issue. The trial resulted in a judgment for the plaintiff in the sum of $7085, from which judgment an appeal was prosecuted to the Appellate Court for the First District, which affirmed the judgment. The case is now before this court upon *certiorari.*

The evidence of the plaintiff is substantially as follows: He had a restaurant and soft drink parlor at 5100 South LaSalle street, in Chicago, and for seventeen years had conducted a butcher business. He had a safety deposit box in the defendant's bank premises, for which he paid two dollars a year. He had had a box there for three years and a checking account since 1921. On June 30, 1921, in the morning, he went to the defendant's bank, and taking certain checks which he had received from employees of the Pullman Company with whom he did business, had one Bru-

baker, the teller, cash them.  Not having endorsed them, about one o'clock Brubaker called him up and asked him to come over and sign them.  He went back to the bank at 1:30 P. M. and endorsed the checks, made a deposit, and after being at the teller's cage for three or four minutes went through the first entrance of the safety deposit vault, wrote his name in the register and then tried to go into the vault itself.  An employee of the bank, Miss Dolan, tried several keys, the plaintiff pulled hard on the door which led to the boxes, and finally it came open.  The plaintiff stepped aside and let two women in.  Miss Dolan had a key and he had a key.  He had never seen Miss Dolan before.  A Miss Kessler was the regular vault attendant, and it was her duty to sit at the door and let customers in.  He got his box out of its place and went into booth No. 1, which was outside of the vault itself.  He put some currency into his box, which he then counted and marked down on a slip, $7000, and a $100 Liberty bond, worth $85. He then took the box, put it back in its proper recess and locked the door.  During the time he had been in the booth his key remained in the door of the compartment in the vault which opened into his box.  After putting his box back into his compartment and locking the door he went out, got into his automobile and went away.  That was about three minutes before two,—the time at which the vault was closed for the day.  The next morning he was called up from the bank and asked to go over there,—that his box was outside of its regular place.  He answered that it could not be his, as he had locked it up.  He went over, saw the box in question, said it was not his and asked them to open the vault,—that his box must be there.  It was opened, and the place where the box was supposed to be was empty.  He then found that the box which was outside was his.

The loss of the money is a mystery which has not been solved.  It was in a tin box, which was placed in the safety

deposit box and the deposit box locked. This deposit box could only be opened by the joint use of a master key which was in the possession of the bank and one of two keys, both of which were in the possession of Emich. There is a sharp conflict in the testimony as to whether, after using the box on the afternoon in question, Emich replaced it in the safety deposit box or left it in the booth outside of the vault, witnesses for the defendant testifying that Emich admitted to them that he might have had a drink or two too much and forgot to put it back and left it in the booth. Emich denied making these admissions. In this state of the record it was highly important that no error should occur in the admission of evidence, the giving of instructions or the proper conduct of the trial.

There was evidence in the record to show that Harry Hunter, a cashier of the bank, resigned upon request of the president about June 1, after which time, although he was given a month's pay, he was around the bank very little up to June 30, which was the day his connection with the bank was severed. On that day he was at the bank a short time to clear up things around his desk. His duties during his employment consisted of attending to new business and selling securities and he had no duties in connection with the vault. The reason assigned for his resignation was that he "drank and was a ladies' man." There was no evidence in the case showing or tending to show any connection between Hunter and the loss of Emich's money or that he had any opportunity whatever for taking the same. There is no connection whatever shown in the evidence between Hunter's employment by the bank and the loss of the money.

In his opening statement to the jury the attorney for the plaintiff stated that some months after June 30, 1921, Harry Hunter, a bank employee, was arrested and charged with tipping off a pay-roll robbery of the Ward Baking Company, and he thought Hunter was indicted for that. In

the examination of Mrs. E. J. Kendall, a witness for the plaintiff, the plaintiff's attorney asked her if she knew of any trouble Hunter was in after June 30, 1921. The court sustained an objection to this question. In the examination of Miss Dolan, a witness for the plaintiff, the following colloquy took place:

Q. "Do you know anything about Harry Hunter being connected with any pay-roll robbery of the Ward Baking Company?

Mr. Lautmann: "Objected to.

Q. "What do you know about it?

Mr. Lautmann: "Objected to. (Objection sustained.)

Mr. Lautmann: "Such a question is highly prejudicial.

Mr. Carpenter: "I never saw this girl before in my life. I want to find out whether she knows he made a confession or not, or was indicted.

Mr. Lautmann: "Whether she knows or not will not prove the fact, and even the proof of the fact would not be material.

Mr. Carpenter: "I suppose if she does know it will be hearsay.

A. "I don't know anything about the matter except what I heard."

At the close of the plaintiff's evidence a motion was made by the defendant to exclude all the evidence in respect to complicity of Harry Hunter in any pay-roll robbery, which motion was allowed and the jury instructed to disregard any such evidence. Thereafter, upon the examination of Oliver F. Smith, a witness for the defendant, he was asked by the attorney for the plaintiff the following question: "Did you have a conversation with Harry Hunter about his connection with a pay-roll robbery of the Ward Baking Company along in the fall or summer of 1921?" This question was objected to and the objection sustained. This question was asked after the court had ruled upon the propriety of it at different times and after the court had

instructed the jury to disregard all reference to Hunter's alleged complicity in the pay-roll robbery. While the objection was sustained to the questions and the evidence stricken out, in a case of this peculiar character this line of conduct would, of necessity, be prejudicial to the defendant. Where prejudicial conduct of this kind is persisted in, the only remedy is a reversal of the judgment, so that a fair and orderly trial may be had under the law. *People* v. *Lewis,* 313 Ill. 312; *Mattice* v. *Klawans,* 312 id. 299.

At the request of the plaintiff the court gave to the jury the following instruction:

"The court instructs the jury that if you believe from a preponderance of the evidence that the plaintiff on June 30, 1921, was lessee of one of the defendant's safety deposit boxes then under the law the defendant owed to the plaintiff as such lessee of one of its safety deposit boxes, the duty to use ordinary care, caution and diligence in the custody and preservation of any moneys or property which may have been kept by the plaintiff in his safety deposit box while in the vault and while in the possession of the defendant, and if you believe from a preponderance of the evidence that the defendant in this case was negligent or failed to exercise ordinary care and diligence, as defined by these instructions, in the custody and preservation of such plaintiff's property or money, if any, so entrusted to defendant's care, and if you further find from a preponderance of the evidence that the plaintiff was not negligent, then you will find the issues for the plaintiff."

This instruction was a mandatory instruction directing a verdict for the plaintiff, and it omitted the essential element that the jury must find that the negligence of the defendant was the proximate cause of the loss. The plaintiff argued that negligence of the defendant was shown in the following particulars: Permitting two or more persons to be in the vault at the same time without an attendant present, in violation of the rules; failure to return the

plaintiff's box to its vault compartment after use by the plaintiff, in violation of the rules; failure to inspect the booths after use by the plaintiff, in violation of the rules; the regular vault attendant assigned to other work; the substitute vault attendant was not attentive to but neglectful of the regular duties of that position; delay of more than twelve hours in notifying the plaintiff of his loss; continuing to retain an incompetent and untrustworthy employee knowing that he was incompetent or had bad habits; and that it was negligence to have the vault containing the safety deposit boxes in charge of girls of immature age and of little experience. There was some evidence in the record upon which to base these arguments. If the plaintiff's story is true,—and the Appellate Court having affirmed the judgment we must accept it as true,—then, even though the evidence showed that the defendant was negligent in these various respects, the plaintiff was not entitled to recover by reason thereof, for the reason that the plaintiff having placed the box containing his money in the safety deposit box and securely locked the same therein, none of these acts of negligence specified could have been the proximate cause of the loss of the money or in any manner contributed to its loss. The instruction, however, authorized a verdict for the plaintiff if the defendant was negligent in any of these respects, if the plaintiff was not negligent, without regard to whether such negligence contributed in any manner to bring about the loss. The giving of this instruction was prejudicial, reversible error.

The judgments of the Appellate Court and circuit court are reversed and the cause remanded to the circuit court of Cook county.                    *Reversed and remanded.*