**People of the State of Illinois, Plaintiff-Appellee,
v. Otha B. Smith, Defendant-Appellant.**

**Gen. No. 51,043.**

First District, Fourth Division.

September 13, 1966.

Harry S. Weber, of Chicago, for appellant.

Danield P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Morton E. Friedman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CHARGE
Armed robbery.

DEFENSE AT TRIAL

Alibi.

JUDGMENT

After a jury verdict finding defendant guilty, the court imposed a sentence of three to seven years.

POINTS RAISED ON APPEAL

(1)  The State's Attorney commented unfairly on the absence of an additional alibi witness.

(2)  The State's Attorney improperly questioned a defense witness concerning his arrest record.

(3)  The State's Attorney asked improper impeachment questions of a defense witness.

(4)  Defendant was not proved guilty beyond a reasonable doubt.

EVIDENCE ON BEHALF OF THE STATE

John Kannell, a grocery store owner, testified that defendant robbed him at gunpoint on December 12, 1964, at 10:30 a. m.  He made an unequivocal identification of defendant in a police lineup.

Another witness did not see the robbery, but identified defendant as a man he had seen at the time of the robbery leaving the grocery store in great haste.

A police officer testified to his apprehension of defendant through tracing of defendant's automobile license plate which had been observed by Kannell.  He also testified concerning Kannell's identification of defendant at a lineup.

EVIDENCE ON BEHALF OF DEFENDANT

*Eugene Griggs*

He had known defendant for three or four years.  On December 12, 1964, defendant lived in the same apartment building with Griggs and his wife.  On that date, at about 9:15 a. m., defendant gave Griggs and his wife permission to borrow defendant's car to go shopping. Approximately forty-five minutes to an hour later they

completed their shopping, and upon returning to the car, found that it would not start. After phoning defendant to inform him of the situation, they took a cab home, arriving there at about 10:00 or 10:15 a. m. Defendant was in his apartment when they arrived. Defendant then called someone to assist him with his car and left the apartment when that person came by.

On cross-examination the State's Attorney elicited the fact that defendant had talked to both Griggs and his wife about the robbery charge. (Mrs. Griggs did not testify.) Griggs stated that he had told defendant he would testify if needed. In answer to a question as to whether his wife also had said she would testify. Griggs stated that she would have testified but that he didn't think they would both be needed and she was working that day. Also on cross-examination Griggs was questioned about his arrest record. Objection to this line of questioning was sustained, and the jury was instructed to disregard it.

*Nora Steele*

He was employed as a mechanic. On December 12, 1964, he was called by defendant who asked him for assistance in the repair of his car. He went to meet defendant at about 10:30 or 10:45 a. m. and the two men worked on the car until almost noon.

*Otha Smith, defendant*

He admitted that he had been convicted of a burglary in 1953 and placed on five years' probation. He denied that he was guilty of the robbery in question. Between August and October of 1964 he had been employed as a bartender at the Schooner Inn, and during that period he had seen Kannell in the tavern.

*Robert Salley*

He was the manager of the Schooner Inn. Defendant had worked at that tavern under his supervision in August, September and October, 1964, and had had access to the cash register. Kannell frequented the tavern dur-

461

ing this period, at which time defendant was the only bartender.

On cross-examination the witness was questioned as follows:

Q. When Smith was in the tavern was he ever there with a person by the name of Bonnie Page?

A. Bonnie Page?

Q. Also known as Bonnie Smith?

A. I have seen her in there.

Q. Would you describe her to us, please?

A. She weighed about 160 or 170 pounds, blonde hair . . .

. . . . . .

Q. Have you seen her recently?

A. No, I haven't seen her since, oh . . .

[Defense counsel]: Judge, I object to any further line of interrogation.

. . . . . .

The Court: Objection sustained.

. . . . . .

Q. Do you know whether or not he was living with Bonnie Page?

[Defense counsel]: Object, this beyond the scope . . .

OPINION

(1) The closing argument of the State's Attorney included the following statement:

. . . you can't tell me Mrs. Griggs who, unquestionably, would be the most honorable of the defense witnesses who testified, if Mrs. Griggs had in fact been there and could say it was that day, the 12th of December, if she could say absolutely, positively it was that day, the 12th day, she would have been

here, no question about that, there is subpoena power, the judge would issue a subpoena and bring her in and put her on the stand, no question about it, if Mr. Engelland [defense counsel] desired, no question in the world. But she didn't come in here.

■ We think this comment was unjustified and highly prejudicial to the defense. It is now well settled that the failure of a defendant to call as witnesses those persons who are aware of facts material to the question of his guilt or innocence creates no presumption of law that, if the witnesses were called, adverse testimony would result, unless "it is manifest that it is within the power of the accused to produce such witnesses and that such witnesses are not accessible to the prosecution." People v. Munday, 280 Ill 32, 42, 117 NE 286. Although in the Munday case the witnesses referred to by the State were codefendants who were to be tried separately, and therefore obviously accessible to the State, a later case applied the same rule to disinterested witnesses. In People v. Rubin, 366 Ill 195, 198, 7 NE2d 890, defendant was charged with receiving stolen property. In his closing argument the prosecutor commented on defendant's failure to call his employees. After observing that the record did not show that the employees were less accessible to the State than to defendant, the court quoted with approval the following passage from the Munday case:

No duty devolved upon plaintiff in error to call anyone as a witness. It was his privilege to produce witnesses and to make a defense or not, as he chose. The duty devolved upon the People to prove his guilt beyond all reasonable doubt before a jury were warranted in convicting him. The duty did devolve upon plaintiff in error not to put it without the power of the People to produce any material witness, and

463

if he did so, the People had the right to show that fact as a circumstance against him. No such situation is presented here.

■■ In the instant case there is also no showing that Mrs. Griggs was not accessible to the State as a witness. When the State's Attorney became aware of the existence of Mrs. Griggs as a possible witness (or, to use his phraseology, "the most honorable of the defense witnesses"), he himself could have employed the subpoena power to bring her to the stand. Therefore, not only was it unfair for the State to infer that, if called, Mrs. Griggs' testimony would be injurious to the defense, but there was also far less than the candor required of an attorney in the implicit implication that the State was without power to bring in this witness.

■ While it is true that no objection was raised at the trial to the impropriety of this closing argument, we are of the opinion that the result was of sufficient gravity to affect the substantial right of defendant to a fair jury consideration of his alibi defense. In this circumstance we are permitted on review to find reversible error regardless of the absence of timely objection, and we so find. Ill Rev Stats (1963), ch 38, § 121–9; People v. Davis, 74 Ill App2d 450; People v. Moore, 9 Ill2d 224, 231, 232, 137 NE2d 246; People v. Morgan, 20 Ill2d 437, 441, 170 NE2d 529.

(2) Our attention is next drawn to the following cross-examination of defense witness Griggs:

Q. Mr. Griggs have you ever been arrested by the police?
A. Yes sir.
Q. Approximately how many occasions?
A. Oh, I don't know, six or seven times, maybe more, I don't know.
Q. Could it be ten times?
A. It's possible.

464

Q. Were you ever convicted?
A. No.
Mr. Engelland: At this time I'm going to object to any reference to this and I'll make a motion outside the presence of the jury. (Objection sustained, motion for mistrial denied.)

■ For purposes of impeachment by criminal record, a witness can be required to testify only as to convictions of infamous crimes and it is error to inquire as to prior arrests or indictments. People v. Hoffman, 399 Ill 57, 63, 77 NE2d 195. The reason underlying this rule is that the credibility of a witness cannot be presumed tainted by proof of anything less than an infamous crime conviction. People v. Halkens, 386 Ill 167, 179, 53 NE2d 923. Although the court sustained defense counsel's objection to the questions and answers regarding Griggs' contact with the police, and admonished the jury to disregard them, the prejudice to defendant was already accomplished. Once informed, the jury could not erase from their minds the knowledge that Griggs had a history of a large number of police arrests. Nor did the State's Attorney permit them to do so. That portion of the State's closing argument which exalted the absent Mrs. Griggs as a witness who, if called, would be the "most honorable of the defense witnesses," had the effect of reminding the jury of her husband's arrest record. No general instruction to the jury that they should disregard stricken testimony could cure this prejudicial result.

■ (3) We find further prejudicial error in that part of the cross-examination of defense witness Salley which questioned defendant's inferentially illicit relationship with a woman known as Bonnie, apparently a person of a different race from that of defendant. Because there was no basis found in the direct examination of the witness for such a line of inquiry, its only effect

was to attack improperly the character of the defendant. The State's explanation that it was attempting to bring to the jury's attention the absence of a "possible" alibi witness far from justifies this marked departure from proper cross-examination. Furthermore, although an initial objection to interrogation on this subject matter was sustained, counsel for the State persisted with the most damaging question of whether or not defendant was living with Bonnie.

(4) While we are not prepared to say that, clear of error, the record would not support a finding of defendant's guilt beyond a reasonable doubt, we do conclude that defendant is entitled to a new trial in which his defense may be considered upon the merits of his witnesses' testimony free from improper and unfair disparagement and aspersions by the State. People v. Gougas, 410 Ill 235, 241, 102 NE2d 152; People v. Lewis, 313 Ill 312, 319, 320, 145 NE 149; People v. Newman, 261 Ill 11, 15, 103 NE 589.

DECISION

The judgment of the Circuit Court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

DRUCKER, P. J. and McCORMICK, J., concur.