2 Ill. App.3d 621 (1971)
276 N.E.2d 416
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
LARRY CALVIN PEPPER, Defendant-Appellant.
No. 71-43.
Illinois Appellate Court  Third District.
December 15, 1971.
Bruce Stratton, of Ottawa, (John Barton, of counsel,) for appellant.
James N. DeWulf, State's Attorney, of Rock Island, (F. Stewart Meridan, Assistant State's Attorney, of counsel,) for the People.
Reversed and remanded.
Mr. JUSTICE SCOTT delivered the opinion of the court:
This is an appeal from the circuit court of Rock Island County.
There is a great discrepancy between the defendant Pepper's version of the factual situation in this case and that of the state. However, it is apparent that the defendant on July 26, 1970, returned to his home in Moline, Illinois, after a three day camping trip and at this time noticed *622 that his motorcycle was missing from where he had left it in his front yard. After making inquiries of various neighbors concerning the motorcycle the defendant called the police but before they arrived the vehicle was discovered in the defndant's back yard. After their arrival the police talked to the defendant, his girl friend, and a neighbor, one Danny Adams. At this time the police learned that Adams had told the defendant that earlier in the evening two members of the Grim Reapers, a motorcycle club, had been overheard plotting the theft of the defendant's cycle. The defendant suspected that a member of the club, one John Young, had tampered with his cycle and he made statements to the effect that if the law enforcement officials wouldn't take care of the matter he would. The testimony is in dispute as to whether at this time defendant was wearing a holster and a gun, or only the holster. Apparently the defendant carried a holster and a gun with him while he was on the camping trip. A deputy sheriff cautioned the defendant that if he found out that John Young had tampered with the motorcycle or had tried to steal it, they were to be notified and they would take care of the matter. After the law enforcement officials had left, the defendant, his girl friend, Adams, and another friend named Danny Brown proceeded to the home of John Young where a Grim Reapers party was in progress. The defendant was armed with a 22 Ruger Magnum revolver and Adams had with him a 32 caliber pistol. Sometime after the defendant's arrival at the party another guest named Skip Altemus was shot through the knee. The evidence regarding the shooting is in conflict in that the defendant claims that he was attacked by a number of the Grim Reapers and after being thrown to the ground and pummeled his gun was taken away from him and that he heard the shots as he fled from the scene of violence. The State's testimony was to the effect that the defendant accused almost everyone present at the party of stealing his motorcycle and finally an argument ensued between him and the victim Altemus. The State's witnesses testified that the defendant aimed his gun directly at the mid-section of the victim and when the victim attempted to knock the gun away he was shot in the knee. After the shooting the defendant called the police and upon their arrival told them that he had been attacked and beaten at the party. Subsequently an investigation was made and the defendant was indicted for attempted murder and aggravated battery. After trial by jury defendant was found guilty of aggravated battery causing great bodily harm and sentenced to a term of not less than two nor more than ten years.
A number of issues have been presented for review but we first direct our attention to the question as to whether or not the defendant was *623 denied a fair trial because of improper remarks by the prosecutor in his final argument to the jury.
In his closing summation to the jury the prosecutor repeatedly commented on the failure of the defendant to call Danny Adams as a defense witness. It was Adams who accompanied the defendant to the Grim Reapers party on the night of the shooting. Each time the prosecutor commented about Adams failure to testify he further implied that the defendant's failure to call him was because his testimony would be adverse to that of other defense witnesses. The record discloses that during the trial Danny Adams was in the court room or in a corridor outside the court room and that the state had knowledge of his presence.
In the case of People v. Munday, 280 Ill. 32, 117 N.E. 286, our Supreme Court stated:
"To say that it was the duty of plaintiff in error, under the law, to produce witnesses who were equally accessible to the state, and who were supposed to be in possession of facts having a bearing upon the truth or falsity of the charge against him, would be placing a burden upon him that the law does not require or tolerate. Such a rule would be in conflict with the doctrine of the presumption of innocence."
In People v. Rubin, 366 Ill. 195, 7 N.E.2d 890, the prosecutor over defendant's objections was permitted to argue that the defendant did not produce his employees to testify because they knew the goods were "hot" and would not have anything to do with the matter. There was no showing that the witnesses were not as accessible to the People as they were to the defendant. Following the precedent in People v. Munday, supra, our Supreme Court held that an accused is under no duty to produce witnesses who are equally accessible to the state, since a contrary rule would be in conflict with the doctrine of presumption of innocence.
A situation analogous to those found in the Rubin and Munday cases appeared in People v. Smith, 74 Ill. App.2d 458, 221 N.E.2d 68, when the prosecutor in closing argument stated that the wife of the alibi witness could and would have been produced by defense if her testimony supported the alibi. Again there was no showing that the wife was not equally accessible to the state. The conviction of the accused was reversed and the court stated:
"Failure of defendant to call as witness those persons who are aware of facts material to question of his guilt or innocence creates no presumption of law that if witness were called adverse testimony would result unless it is manifest that it is within power of accused to produce such witness and witness is not accessible to prosecution."
In People v. Williams, 40 Ill.2d 522, 240 N.E.2d 645, which was a *624 murder case, the prosecutor in his closing statement and after a lengthy review of evidence concerning a gun which was never produced and the ballistics testimony with reference to the spent bullets and methods of identifying them stated to the jury: "I don't believe for a second that this man's gun will ever turn up. It can't. He can't afford to have that gun ever turn up. And we all know why he can't do that. We know why it hasn't turned up. We know why Mr. Nical (ballistics expert) has not been allowed to look at it to compare slugs fired from it with slugs in these plastic bags before you." The defendant contended that these statements were highly prejudicial to him and jeopardized his presumption of innocence and that they constituted a denial of his Federal and State guarantees against self incrimination. After examining a number of cases dealing primarily with the guarantee against self incrimination the court held:
"In the light of these cases it is our conclusion that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution." People v. Williams, supra.

It should be noted that in the Williams case the Supreme Court concerned itself with the question of self incrimination and the right of a defendant to testify. It should further be noted that in Williams the comments of the prosecutor were directed to defendant's failure to produce a gun and the prosecutor acknowledged that the gun was not accessible to the State.
The State in the case before us interprets the Williams opinion as one which overrules the preceding opinion of People v. Smith. With this contention we cannot agree, but on the contrary hold that the cases of Munday, Rubin and Smith still reflect the law of this state concerning the defendant's presumption of innocence and the prosecutor cannot shift the burden of proof in a case by commenting upon the defendant's failure to call a witness when that witness is equally accessible to the State.
 1 In the case before us the prosecutor not once but five times during closing argument called attention to the fact that an occurrence witness had not been called by the defendant and in the same final argument the prosecutor acknowledged that this witness was accessible and in fact was at times present in the court room. We believe that such remarks by the prosecutor under such circumstances constitute error.
The record discloses that in final argument the prosecutor further told the jury that if the defendant shot the victim accidentally he might still *625 be guilty of aggravated battery but perhaps not attempted murder. The State concedes this remark was improper but contends that it was not of such magnitude to mandate reversal of the conviction in light of the court's instruction regarding the charge of battery and the elements to be proven.
Also in closing argument the prosecutor told the jury that it was against the law for the defendant to carry a loaded gun and that further it was against the law for the defendant to try and find out who stole his motorcycle.
 2 It may well be that individually these additional remarks made by the prosecutor in addressing the jury would not constitute reversible error. However, their cumulative effect could only be prejudicial to the defendant. The record discloses that considerable time was consumed by the jury in arriving at a verdict. The case went to the jury for deliberation at 4:30 P.M. on a Thursday. At 11:30 P.M. that night the jury was sequestered in a hotel. At 10:00 A.M. the following morning a motion for mistrial on the grounds that the jury was deadlocked was denied. Deliberations continued until 1:30 P.M., at which time a verdict was returned finding the defendant guilty of the crime of aggravated battery. We should make no assumptions or speculations as to what transpired in the jury room, but in view of the time consumed we know that the jurors did not find their task an easy one. Therefore the cumulative effect of improper and ill-advised remarks on the part of the prosecutor in his final argument to the jury cannot be lightly brushed aside. In the circumstances surrounding this case we hold such remarks to be error.
While we are not prepared to say, clear of error, the record would not support a finding of the defendant's guilt beyond reasonable doubt, we do conclude, however, that the defendant is entitled to a new trial free from improper remarks on the part of the prosecution. (See People v. Smith, supra; People v. Gougas, 410 Ill. 235, 102 N.E.2d 152; People v. Lewis, 313 Ill. 312, 145 N.E. 149; People v. Newman, 261 Ill. 11, 103 N.E. 589; People v. Collins, 274 N.E.2d 77.) Having so concluded it is unnecessary for us to consider other issues raised by this appeal. Accordingly the judgment of the circuit court of Rock Island County is reversed and the cause is remanded for a new trial.
Reversed and remanded.
ALLOY, P.J., and DIXON, J., concur.