THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEPHEN BELLER, Defendant-Appellant.

Fifth District    No. 76-226

Opinion filed November 21, 1977.

Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Martin N. Ashley, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal from judgments and sentences entered in four cases against defendant Stephen T. Beller.

Defendant was found guilty by a jury in the circuit court of Williamson County of the offenses of burglary and felony theft. On April 20, 1976, prior to defendant's being sentenced on the jury verdicts, defendant pleaded guilty to three other burglary charges pursuant to a negotiated plea agreement. The plea agreement included a sentence recommendation covering the guilty verdict offenses as well as the untried offenses. Defendant agreed to plead guilty to the three burglaries in exchange for a sentence of eight to 30 years on the four pending cases and immunity from prosecution with respect to numerous burglaries and thefts under investigation. It also was agreed that items seized from the residences of defendant and an accomplice which could not be positively identified by the victims of the burglaries would be turned over to defendant's fiancee, Ms. Lynn Lawrence.

After thoroughly admonishing defendant of the consequences of his pleas and establishing factual bases therefore, the court sentenced defendant to the penitentiary for two consecutive sets of two concurrent sentences of four to 15 years (four sentences in all). The initial sentences were ordered to be consecutive to any previous sentences defendant was on parole from when the instant crimes were committed; however, the written judgment orders direct that the sentences be consecutive with "the parole violation in 74-CF-296 in St. Clair County."

Defendant raises six issues in this appeal. The first three issues present questions concerning the fairness of defendant's jury trial. The remaining three pertain to the sentencing of defendant. The issues are: (1) whether the prosecutor's comment on defendant's failure to call a non-alibi witness deprived him of his right to be presumed innocent throughout the trial;

(2) whether the comments on defendant's failure to state his defense to the police at the time of his arrest violated his privilege against self-incrimination and prejudiced the jury against his assertions of innocence; (3) whether the prosecutor's opening statements, cross-examination and closing argument were improper and deprived defendant of a fair trial; (4) whether defendant's sentences should be modified or remanded for further consideration because the court believed that the law mandated that a parolee's sentence be served consecutively with the sentence under which he was held by the Department of Corrections; (5) whether defendant's sentences were excessive; and (6) whether defendant may be entitled to have his sentences vacated and remanded for a new sentencing hearing.

Since defendant does not challenge the sufficiency of the evidence to support the jury's guilty verdicts, we shall only generally describe the nature of the proof at trial and supply additional information as necessary for explanation of our disposition of the particular issues.

The residence of Ronald Morneweg and his family near Johnston City was burglarized on December 13, 1975. Various items including a number of intended Christmas presents were removed from the house. An investigation of the sale of a blue linde star ring which was positively identified as a present stolen from the Morneweg residence led the police to arrest Jimmie D. Walker, a co-indictee as to these burglary and theft charges. Mr. Walker told the police that another person that had been involved in one of these burglaries had certain items at the residence where he was staying on Brush Street in Johnston City.

Before executing a search warrant on the house, police ascertained that defendant was living there. The house was searched; numerous items were seized, including several which matched the description of items stolen from the Mornewegs, and defendant was arrested. At trial, two of these items, a pair of boots with a distinctive scuff on the right boot heel and a girl's Timex watch with a solder-repaired band, were positively identified by Mr. and Mrs. Morneweg as items missing from their home. In addition, Mrs. Morneweg believed five other items (a gold bracelet, a Maxi hair dryer, two pairs of pants (sizes 5 and 11) and pajamas) were those items taken from her house because they were identical to the missing items, being of the same types, sizes and colors.

Jimmie Walker, initially a co-defendant in the case, testified for the State under a grant of immunity. (See Ill. Rev. Stat. 1975, ch. 38, par. 106—1 *et seq.*) He basically testified that defendant and Larry Meyer, the witness' brother-in-law, burglarized the Mornewegs' house while he acted as the getaway car driver. They subsequently divided the merchandise between them. Of the items Walker's testimony apportioned to

defendant, five were seized at the Lawrence residence where Beller lived and were identified at trial by the victims either as being a stolen item or as being identical with one.

Defendant's defense was that he innocently purchased most of the items in question from Walker on various occasions. The repaired watch was said to have been purchased on December 30 or 31, 1975, in a bar in Johnston City from a stranger in blue jeans and T-shirt, accompanied by a woman in "hot pants." Defendant produced three witnesses to corroborate his testimony concerning these purchases.

Mrs. Mary Lawrence, mother of defendant's fiancee Lynn, and in whose house Beller was living when arrested, testified that on several occasions Walker and Meyer would drive over to the house and that on each occasion defendant would return to the house with some of the items in question. Larry Meyer was separately charged with this same burglary and theft in another indictment. He testified that Walker tried to sell his wife some of these items and that he drove Walker to the Lawrence residence several times so that Walker could sell defendant the slacks, pajamas and boots. James Lawrence, Lynn's brother, testified that in December he was with defendant at Larry's house in Marion, Illinois, when defendant bought a Maxi hair-dryer from Jimmy Walker.

In addition, two prisoners of the Williamson County jail testified to overhearing a conversation in the jail between Jimmie Walker and defendant in which Walker told defendant he would admit to selling defendant the slacks and pajamas but that defendant would have to come up with his own explanation of how he got the rest of the things he sold defendant. Both witnesses testified that they were intimidated by the police prior to trial about perjury penalties and the ill effect their testimony might have on their own cases. In rebuttal, a police detective testified that at the request of the State's Attorney he and several other officers interviewed these two witnesses about their intended testimony. One witness said that he had not seen or heard anything about which to testify. The other witness told the detective that he did not know what he had heard and did not know whether he should say anything or not. The detective agreed that he had told them about the offense of perjury.

Defendant first contends that the prosecutor's comment on his failure to call a witness made during closing argument denied him his presumption of innocence and a fair trial. We agree that the comment complained of was improper but find that it was harmless beyond a reasonable doubt and was not a material factor in defendant's conviction.

During his testimony defendant stated that he originally purchased the pair of boots admitted at trial from Walker for Davis Lawrence, his fiancee's younger brother. He further testified that David tried them on

but decided that he did not like them because the heels were too high. Defendant, therefore, kept them for himself and dyed them black at a later date. David Lawrence was not called as a defense witness.

In closing argument the State's Attorney recounted this portion of defendant's testimony and then made the following statement:

> "David Lawrence lives with the Lawrence family up on Brush Street or whatever it is, in Johnston City, Illinois. Easily available to the Defendant. He did not bring David here to testify to that fact. [David's trying on the boots.] He did not because he could not get that young man apparently as he could the others to lie for him."

Defense counsel objected to this comment but the objection was overruled.

■■■ It is fundamental to our system of criminal law that an accused is presumed innocent and that the burden of proving his guilt lies with the State. Defendant does not have the burden to prove his innocence. Consequently, the "failure of a defendant to call as witnesses those persons who are aware of facts material to question of his guilt or innocence creates no presumption of law that, if the witnesses were called, adverse testimony would result * * *" (*People v. Smith*, 74 Ill. App. 2d 458, 463, 221 N.E.2d 68; *People v. Pepper*, 2 Ill. App. 3d 621, 623, 276 N.E.2d 416), and the general rule is that it is improper for the prosecution to comment on a defendant's failure to present witnesses when such witnesses are equally accessible to both parties (*People v. Rubin*, 366 Ill. 195, 7 N.E.2d 890; *People v. Munday*, 280 Ill. 32, 117 N.E. 286; *People v. Mays*, 3 Ill. App. 3d 512, 277 N.E.2d 547). However, as a supplement to the general rule potential *alibi* witnesses injected into the case by the defendant are deemed unavailable to the prosecution and comment with regard to the failure of such witnesses to testify is proper. *People v. Mays; People v. Spenard*, 46 Ill. App. 3d 892, 361 N.E.2d 856.

■■ The prosecutor emphasized the accessibility of Mr. Lawrence to defendant but there is nothing in the record which would suggest that he was not equally accessible to the State. To the contrary, the prosecutor's comment might be viewed as acknowledging an accessibility to the State. Moreover, although his name was injected into the case by defendant, David Lawrence obviously was not an alibi witness. He, in fact, appeared to have no knowledge of any matter which bore directly upon whether defendant obtained the property in question as a burglar or as an innocent purchaser. At most, his testimony could only have reflected on the credibility of defendant's testimony. Under the applicable rules, we believe this comment was improper, especially in view of the fact that the comment implied a reason for his not testifying as well as an implication of the potential testimony's adversity to defendant's.

However, the same factors which demonstrate the slight probity of the potential testimony of David Lawrence leads us to the conclusion that these remarks were not a material factor in defendant's conviction. (*People v. Fields*, 59 Ill. 2d 516, 322 N.E.2d 33, *cert. denied*, 423 U.S. 843, 46 L. Ed. 2d 65, 96 S. Ct. 80.) Improper remarks do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Davis*, 38 Ill. App. 3d 411, 347 N.E.2d 818; *People v. McCorry*, 51 Ill. 2d 343, 282 N.E.2d 425.) We are confident that this single comment's probable result was not prejudicial to defendant. Any potential testimony of Mr. Lawrence would be peripheral to the issue whether defendant purchased the items in question or stole them. The primary task before the jury was to assess the relative credibility of the actual testimony relating to this factual issue supplied by defendant and his witnesses with that of the State's accomplice witness, Jimmie Walker. We believe this remark could not have unduly affected the jury in making the assessment.

Defendant next contends that the prosecutor's comments on his failure to state his defense to the police at the time of his arrest violated his privilege against self-incrimination and denied him a fair trial. He directs our attention especially to *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, and *United States v. Impson* (5th Cir. 1976), 531 F.2d 274.

The testimony of a police detective revealed that after defendant was under arrest and in the process of being transported to jail, defendant asked him if they had Larry Meyer in custody. The officer responded that they did not. There is nothing in the record to indicate that the defendant made any other statements while in custody. The record is also silent as to when, if ever, defendant was advised of his *Miranda* rights.

In final arguments, the State's Attorney mentioned this evidence, suggesting that defendant asked this question because he knew that Meyer was the man who could "hurt him the most." He then noted that defendant's claim at trial was that he bought the items from Walker and went on to argue as follows:

"If that were true [his defense], ladies and gentlemen of the jury, when he was arrested, who would he be asking about? He wouldn't ask about Meyer. He would say, do you have Jimmie Walker under arrest. I want to talk to that young man because he sold me those items. That's what he would have said. He would not have asked about Meyer, not the one who went in the house with him, he would have asked about the man who sold the stuff to him."

In closing, the prosecutor again repeated this theme:

"When this man was arrested and when he wanted to know where

Meyer was, he [*sic*] co-Defendant, he never told anybody, I bought this stuff. From Jimmie Walker. I bought it."

The obvious purpose behind these comments was to impeach defendant's testimony and to suggest that it was a recent fabrication. Although some of the argument is couched in the terms of inference to be drawn from defendant's actual question of the detective, the remarks basically direct attention to the fact of defendant's silence with respect to any defense of innocent purchase.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the question was presented as to whether a State prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest. The Supreme Court concluded that use of the defendant's post-arrest silence in this manner violates due process, reasoning that it would be fundamentally unfair to advise a person that he had the right to remain silent and then to allow that silence to be used to impeach an explanation subsequently offered at trial. 426 U.S. 610, 618, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245.

The State argues that the *Doyle* rule is confined to cross-examination situations and therefore inapplicable here. We disagree. The act of impeaching one by directing attention to his post-arrest silence could be as facilely and effectively achieved in closing arguments as in cross-examination. The courts of Illinois have not hesitated to find *Doyle* violations in closing arguments. *E.g., People v. Monaghan*, 40 Ill. App. 3d 322, 352 N.E.2d 295; *People v. Patterson*, 44 Ill. App. 3d 894, 358 N.E.2d 1164.

The State assumes from the silence of the record on the point that defendant was not given his *Miranda* warnings prior to this silence and argues that this case is therefore outside the scope of the *Doyle* rule. It is true that *Doyle* did not decide whether use for impeachment purposes of a defendant's silence at the time of arrest if he had not been given *Miranda* warnings was a violation of due process. In a footnote the court stated, however, that in *United States v. Hale*, 422 U.S. 171, 177, 45 L. Ed. 2d 99, 95 S. Ct. 2133, 2137, the court noted that "silence at the time of arrest may be inherently ambiguous even apart from the effect of *Miranda* warnings, for in a given case there may be several explanations for the silence that are consistent with the existence of an exculpatory explanation." (426 U.S. 610, 617 n. 8, 49 L. Ed. 2d 91, 97 n.8, 96 S. Ct. 2240, 2244 n.8.) The United States Court of Appeals, Fifth Circuit, in reconsidering a case in light of *Hale*, was presented with the same argument advanced here by the State. (*United States v. Impson* (5th Cir. 1976), 531 F.2d 274.) It found unpersuasive the argument that silence after *Miranda* warnings is less inconsistent with innocence than silence in the

absence of such warnings, noting that such an argument would reward the police for a failure to promptly inform an accused person of his right to remain silent. To our knowledge no Illinois court has decided whether this factual difference would allow the use of one's silence after arrest to impeach an exculpatory story given at trial. Because of the posture of this case, we decline to decide this issue.

■■ The remarks defendant complains of were not objected to at trial or challenged prior to this appeal. This would normally mean that defendant has waived this issue for consideration on appeal. (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Etten*, 29 Ill. App. 3d 842, 331 N.E.2d 270, *cert. denied*, 425 U.S. 994, 48 L. Ed. 2d 818, 96 S. Ct. 2207.) However, recent cases would suggest that in light of *Doyle* if such a violation occurs it should be considered plain error if not objected to. (*E.g., People v. Craigwell*, 40 Ill. App. 3d 889, 353 N.E.2d 101; *People v. Monaghan*, 40 Ill. App. 3d 322, 352 N.E.2d 295.) Nevertheless, even assuming that a *Doyle* violation is present here, we find that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) The legitimate comments of the State's Attorney relative to the inference to be drawn from defendant's question of the officer made after arrest essentially duplicated the inferences he drew from defendant's silence. Under these circumstances we are confident that the jury would not have reached a different verdict had the objectionable remarks not been made.

We have examined the cases cited by the State for the proposition that when an accused makes a statement to arresting officers, comment on its incompleteness or its failure to substantiate his testimony at trial is proper. We find them inapplicable here. Defendant's simple question can hardly be viewed as a "statement" or as sufficiently inconsistent with his trial testimony to authorize comment on his post-arrest silence.

Defendant's final contention concerning the fairness of his trial is that there were improper opening statements, cross-examination, and closing argument.

■■ Defendant first argues that his moral character was impermissibly attacked by the prosecutor's remarks and questioning of defense witnesses. In his opening statement, the prosecutor stated that when the police executed the search warrant they found defendant in bed with a young woman who was probably his fiancee. On cross-examination of Mrs. Lawrence, the prosecutor elicited from her that her daughter, Lynn, the fiancee of defendant, was pregnant. He thereafter argued in closing argument that Mrs. Lawrence had a motive, interest and bias to testify in favor of defendant because of her daughter's condition and relationship to defendant. None of these remarks or questions were objected to at trial. The issue of their propriety must be deemed waived. Showing a

witness's interest, motive or bias is a proper means of impeachment. (*People v. Jackson*, 116 Ill. App. 2d 304, 253 N.E.2d 527; *People v. Rogers*, 42 Ill. App. 3d 499, 356 N.E.2d 413.) A prosecutor is afforded wide latitude in cross-examining a witness concerning the latter's relationship with a defendant since the possible bias of a witness is always material, and the relationship to a defendant is clearly a possible basis for bias. *People v. Franklin*, 42 Ill. App. 3d 408, 355 N.E.2d 634.

Defendant also argues that a factual recitation of the prosecutor in opening statements which was not subsequently supported by evidence at trial and was not objected to by defendant constitutes reversible error. *People v. Weller*, 123 Ill. App. 2d 421, 258 N.E.2d 806.

The statement had to do with the exchange which took place between defendant and the police detective after defendant's arrest. As already noted, a detective testified that defendant while under arrest asked him if Larry Meyer was in custody and that he responded that he was not. In the opening statement the prosecutor stated that the officer's response to the question was, "No, should we?" and that the defendant responded with something like "Yes, he even knows more about this than I do."

■■ Defendant and his private counsel must be presumed to have known what defendant said to the officer. They could have objected to this statement but chose not to. We believe this issue has been waived. In any event, there is no indication of bad faith on the part of the prosecutor in making this statement (see *People v. Bell*, 27 Ill. App. 3d 171, 176, 326 N.E.2d 507), and the unproven statement is substantially less egregious than those involved in *Weller*.

■■ The first contention raised by defendant with respect to the sentences he received pursuant to plea negotiations is that the trial court was under the mistaken impression that under section 5—8—4(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(f)) defendant's status as a parolee mandated that his sentences be consecutive to the sentence he was already serving. As already noted, the written orders direct that his negotiated sentences be consecutive with his "parole violation." Defendant believes that this misapprehension requires this court either to reduce the sentences so that they are concurrent with his previous sentence or to remand this cause for a new sentencing hearing. We agree that the trial court was in error as to this statute's effect on defendant because of his parole status.

Section 5—8—4(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(f)) reads in pertinent part:

> "(f) A sentence of an offender committed to the Department of Corrections at the time of the commission of the offense shall be served consecutive to the sentence under which he is held by the Department of Corrections."

In *People ex rel. Gibson v. Cannon*, 65 Ill. 2d 366, 357 N.E.2d 1180, our supreme court held that this section must be construed so as not to apply to those who are on parole at the time of the commission of a subsequent offense. The section does not mandate a consecutive sentence because a parolee is not being "held" by the Department but rather only subject to its constructive custody. *Cf. People v. Gillespie*, 45 Ill. App. 3d 686, 360 N.E.2d 133.

The remarks of the trial judge in the sentencing proceeding clearly show that he believed that the statute required consecutive sentencing. In light of *Cannon* this belief was incorrect. Because of this belief the court did not engage in the normal weighing procedure to determine the desirability of concurrent or consecutive sentencing. Since under section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(b)) the judge could have made the negotiated sentences consecutive if having regard to the nature and circumstances of the offense and the history and character of defendant, he was of the opinion that such a term was necessary to protect the public from further criminal conduct by the defendant, we believe the cause should be remanded for reconsideration of whether his negotiated sentences should be concurrent or consecutive with the sentence imposed at his parole revocation.

We find that it is unnecessary to decide the issue raised by the State as to whether a court can make its sentence consecutive to an anticipated but yet to be imposed sentence for parole violation.

■■ Defendant's next contention is that his sentences were excessive and should be reduced because they are grossly disparate from the four concurrent sentences of two to 10 years which Larry Meyer received for almost the same conduct as defendant pursuant to his negotiations. (Meyer was sentenced in a joint sentencing hearing with defendant.)

This argument is without merit and not worthy of extended comment. First, defendant's pleas were negotiated and the sentences were bargained for. He got the benefit of his bargain and cannot now be heard to repudiate it on these grounds. (See generally *People v. Stacey*, 68 Ill. 2d 261, 369 N.E.2d 1254.) Moreover, we have absolutely no basis upon which to compare the relative culpability of Beller and Meyer since they both pleaded guilty and waived presentence reports. In addition, the record contains positive evidence of defendant's previous conviction for a felony prior to the commission of the instant offenses while on parole. Under these circumstances, a reduction of his sentence by this court would be totally unwarranted.

Defendant's final argument is contingent upon our reversal of the convictions which resulted from his trial. Since we have not disturbed those verdicts, we need not address this contention.

For the foregoing reasons, we reverse that portion of defendant's

sentences which direct them to be consecutive to defendant's parole violation sentence and remand this cause for further consideration consistent with the views expressed herein. In all other respects, the judgments and sentences of the circuit court of Williamson County are affirmed.

Convictions affirmed and remanded.

CARTER, P. J., and EBERSPACHER, J., concur.