The People of the State of Illinois, Plaintiff-Appellee, *v.* Theotis Clark, Defendant-Appellant.

(No. 55138;

First District—December 17, 1971.

*Rehearing denied January 21, 1972.*

Kenneth L. Gillis, and Raymond J. Petersen, both of Chicago, for appellants.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, Robert A. Novelle and Roger S. Matelski, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:

## OFFENSE CHARGED

Armed robbery. Two counts. (Ill. Rev. Stat. 1967, ch. 38, par. 18—2.) Aggravated battery. (Ill. Rev. Stat. 1967, ch. 38, par. 12—4.) Attempt (to commit murder). Ill. Rev. Stat. 1967, ch. 38, par. 8—4.

## JUDGMENT

After a bench trial, defendant was found guilty of armed robbery and sentenced to a term of eight to fifteen years.

## CONTENTIONS RAISED ON APPEAL

1. Defendant was not proven guilty beyond a reasonable doubt.

2. The statutes authorizing admission into evidence of defendant's prior convictions for the purpose of impeaching his credibility as a witness are unconstitutional.

## EVIDENCE

*Charles Gibson,* for the State:

At the time of the trial, he was incarcerated for a misdemeanor conviction. On July 28, 1968, he and Alfonzo Jackson went to the King Pin Den Tavern between 11:30 P.M. and midnight. There were 10 or 11 other customers in the bar. While he was there, he drank some beer. Earlier, he had a little wine with some people in the alley.

He and Alfonzo played pool. About 2 hours and 15 minutes after arriving, he was shooting pool with a young lady when he noticed a man come in, but did not pay any attention to him. Then, four more persons came in, about 10 feet from him, and said, "All right, this is a stick-up." He saw guns and raised his hands. Someone said, "I will take all your wallets and your money, put it out on the table." He placed his wallet, which contained between $34 and $37, on the pool table which he was facing. One person was taking the money off the table from behind where witness was standing. He turned around and saw that it was defendant. At that moment, defendant was only a few feet away and he was holding witness' wallet in his hand. He observed defendant for about 20 seconds.

He said to defendant, "Why are you doing this to me? I know you." Defendant answered, "No, you know I won't do that to you. Go ahead, go ahead and sit down." Defendant then searched witness for a gun, which he did not have, and returned witness' wallet, which was found to be empty. Defendant had a hand gun.

When witness sat down, another man came and told him to stand. As he rose, the man shot at him and the bullet grazed his forehead. He fell to the floor, still conscious, but lay there as though he were unconscious. Then two or three of the robbers went over to the counter.

One man grabbed him, pulled him off the floor, and, before leaving, put him in the women's washroom with 10 or 11 other people. Some of the people left, but five or six were still there when the police arrived 10 or 15 minutes later.

He told the police that defendant was one of the robbers. He knew defendant, having seen him every day between January, 1968 and April, 1968 in the city jail.

*Bettie Burks*, for the State:

She was working as a barmaid at the King Pin Den on July 28, 1968. Her testimony corroborated that of Gibson in regard to the robbery.

Additionally, she testified that one of the robbers climbed over the bar, and she heard him say, "Mighty Blackstone Rangers." After one of the fellows told her the robbers were gone, she got up and called the police. Some whiskey and her purse were missing, and $200 from the cash register was gone. She was unable to identify any of the robbers and could not say if defendant was or was not one of the group.

There were bright lights in the back of the tavern and over the pool table at the time of the robbery, but the lights over the bar were not bright.

*Alfonzo Jackson*, for the defense:

He also corroborated Gibson's testimony as to their having been drinking and playing pool when the robbery took place, but said that, despite having had a good look at the robbers' faces, he could not identify defendant as one of them.

The morning after the robbery, he went to the police station where he was present at a lineup. Defendant was one of the men there but he could not identify defendant as one of the robbers.

*Theotis Clark*, in his own behalf:

On July 28, 1968, he and his girlfriend, Mary Clark, were at Leatha Young's house at 6260 Stony Island around 12:00 or 12:30 in the morning. Also present were Leatha Young's daughters, Mable and Marlene, son-in-law George, and two grandchildren. They watched TV, ate pizza, and talked until defendant left about 4:00 A.M.

He has never been in the King Pin Den and did not commit the offenses with which he was charged.

He knew Charles Gibson from the jail. He is a member of the Blackstone Rangers.

*Marlene Brooks*, for the defense:

She has known defendant for about two years. On July 28, 1968, from 12:00 or 12:30 A.M. to 4:00 A.M., defendant was at her house with his wife, Mary Clark, and witness' mother, brothers, sister-in-law and children.

*Ronald Smith,* for the State:

He is a police officer and was present at a lineup of men, including defendant, on July 29, 1968. Alfonzo Jackson was asked whether defendant was a participant in the robbery and he stated that defendant might have been one of the offenders but he was not certain. Jackson did not state that defendant was not one of the robbers.

## OPINION

■■■ We have examined all of the evidence, including but not limited to that outlined above, and we definitely conclude that there was adequate evidence which, if believed—as it obviously was by the trier of fact—was sufficient to establish defendant's guilt beyond a reasonable doubt. What discrepancies there were, were of no real substance (*People v. Zaeske,* 67 Ill.App.2d 115, 122—123), and Gibson's identification of defendant was unshaken (*People v. Brinkley,* 33 Ill.2d 403, 405). (See also *People v. Mack,* 25 Ill.2d 416, 421.) Defendant's reliance on *People v. Upshaw,* 58 Ill.App.2d 256, 258—261, for the proposition that the State should have called other eye-witnesses of the robbery, is misplaced as applied to this case because of the distinction in facts, there being no showing here as to what such witnesses would have testified to, nor that they were unavailable to the defense.

What we consider defendant's principal point is that the court erred in admitting evidence of the fact that less than 4½ years before, on November 20, 1963, defendant had been convicted of robbery and sentenced to the penitentiary for a term of one to three years (the record does not disclose the date of his release). The declared and limited purpose of this evidence was to impeach the credibility of defendant, this having become an issue when he offered himself as a witness. (See *People v. Williams,* 17 Ill.2d 193, 202, and Ill. Rev. Stat. 1967, ch. 38, par. 155—1.)\* Robbery is among the "infamous crimes" enumerated in Ill. Rev. Stat. 1967, ch. 38, par. 124—1, which may thus be offered for that purpose. (See *People v. Kirkpatrick,* 413 Ill. 595.) It is defendant's contention that both these sections of the statute are unconstitutional, and it was on this ground that defendant sought the direct appeal jurisdiction of the Supreme Court. That court, however, transferred the case here, stating that it "finds and adjudges that this Court has no jurisdiction on direct appeal in this case." Since at the time, the right to such

---

\* This section of the Code of Criminal Procedure provides in part:

"No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction may be shown for the purpose of affecting his credibility: * * *."

direct appeal did lie "in cases involving a question arising under the Constitution of the United States or of this State" (Illinois Constitution of 1870, as amended, Art. 6, § 5), it may be assumed from the transfer order which recited no specific basis for the action, that the Supreme Court rejected jurisdiction for the unstated reason that the question had been previously raised and settled adversely to defendant. (*Fulford v. O'Connor*, 3 Ill.2d 490, 494.) As indeed it had been in cases too numerous to list, since the statute had first been enacted in 1874. *E.g., People v. Lacy*, 24 Ill.2d 607, 611; and see Smith-Hurd Ann.St., ch. 38, par. 734. As a matter of fact, the court's position as to the permissibility of this type of impeachment was reiterated in *People v. Helm*, 40 Ill.2d 39, 45, which was filed May 29, 1968, the judgment in the instant case having been entered on May 8, 1968.

In January, 1971, however, the Supreme Court reconsidered the law on this point and in *People v. Montgomery*, 47 Ill.2d 510, held that Rule 609 of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States "should be followed in future cases." (Page 519.)

It is now urged upon us that this case should be reversed in the light of *Montgomery, supra.* We do not so understand that decision. It is true that the instant litigation can still be classified as "a case" and that we are now at a point of time in the future from the date of the *Montgomery* opinion. Nevertheless, we believe that the *Montgomery* decision was not intended to have this sort of retroactive effect. As we have noted, the *Helm* case, *supra*, was decided after the trial court judgment in this case, and, together with the long line of other cases, it is perfectly clear that the evidence in question was properly admitted in accordance with what the law had been declared to be at that time. There are also, or could be, a fairly large number of other cases similarly situated.

■■ We conclude that when the court in *Montgomery* declared the rule applicable to "future cases," the intention was that it control the trial court's newly declared discretion as to the admissibility of prior convictions offered in evidence only after the date of the *Montgomery* opinion.

■■ If that be so, then *Montgomery* has no bearing on the case at bar. If it not be so, then we would recast this part of our opinion in the alternative, but with the same result. Rather than requote the somewhat lengthy passages found at pages 516—519 in *Montgomery* setting forth the rule and opinions commenting on the subject matter of its criteria, we state affirmatively that we have examined the facts of the instant case in relation to the various factors to be taken into consideration in determining a proper exercise or abuse of the trial court's discretion and conclude that the record of defendant's prior conviction was properly

admitted in this case. We believe that it satisfactorily met the factors enumerated by Chief Justice Burger in *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, following *Luck v. United States* (D.C. Cir. 1965), 348 F.2d 763. See *Montgomery, supra,* page 518.

In addition, we find it interesting that the trial judge in our case saw fit to make the following statement for the record at the hearing on defendant's motion for new trial:

"* * * There is one other thing, Mr. Yates, and that is this, that the item that was presented to the Court in order to affect this defendant's credibility was really not a matter of great concern to the Court anyway. I had heard the People's witnesses and I had determined their credibility in my own mind. I listened to the defendant on the stand before I received this certified copy of a conviction and before I received it I had in my own mind felt that the witnesses for the People were truthful, I believed their testimony, I did not believe Mr. Clark's testimony, so that the need for submitting this certified copy of a conviction was not present, but the State is always concerned that it might be necessary and they offered it and I received it, but in any event your motion for a new trial will be denied."

The judgment is affirmed.

Judgment affirmed.

DRUCKER and LORENZ, JJ., concur.