THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY DAVID NELSON, Defendant-Appellant.

(No. 72-284;

Fifth District—February 4, 1974.

Robert E. Farrell, Deputy Defender, of Mt. Vernon (William H. Wilson, Senior Law Student, of counsel), for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a jury trial in the Circuit Court of St. Clair County defendant was convicted of burglary and sentenced to the penitentiary for a term of not less than two nor more than five years. In this appeal he contends

that he was not proven guilty beyond a reasonable doubt, that the closing argument of the prosecuting attorney was so prejudicial as to constitute reversible error, and that the trial court erred in permitting defendant to be questioned concerning an alleged alias.

The complaining witness, Joseph Dickey, testified that just before midnight on January 11, 1971, he drove up to his meat market in Marissa and observed that four men were in the building. The lighting was good and from 40 or 50 feet away he was able to describe one of them as black and wearing a blue insulated jacket, blue jeans and a green beret or tam. As he circled around the back of the building all four of the men burst out the back door and started to run across a freshly plowed, muddy field. He opened fire on them and, as they slipped and fell in the mud, he thought he hit one. But instead of pursuing them further he went back to the store and called the police. Missing from the change drawer were fifty one-dollar bills bound together with a rubber band, two paper rolls of quarters, two of dimes and two of pennies. Also piled on the floor were several sausages, 150 pounds of bacon and his entire stock of cigarettes. About an hour and a half later the police brought defendant back to the store and Mr. Dickey immediately recognized him, saying, "That's our boy." He was covered with mud,—all over his legs, up to his coat and up his back,—and he wore the same clothing as previously described.

A state trooper testified that he took defendant into custody about 1:10 A.M. on a road not too far from the meat market, that he was heavily covered with mud, and that, when questioned, he said he was hitch-hiking to Sparta. As the officer patted him down he found a bundle of one-dollar bills tied with a rubber band and several rolls of change in his pocket. Defendant was then taken back to the market and turned over to the County police. As the trooper's car stopped in front of the market defendant tried to stuff some of the rolled change down the side of the seat. These were retrieved and later identified, along with the bills, as being similar to the bills and change missing from the market.

Defendant denied that he was a participant in the burglary. He stated that he had left home that evening about 8:00 o'clock to visit his estranged wife in Sparta. His truck had stalled somewhere near the meat market, and he spent some time in an unsuccessful effort to fix it. Finally an acquaintance stopped by and since he and his two companions were also on their way to Sparta defendant joined them. Shortly thereafter they stopped again, and defendant said that when it appeared to him that they were going to do something wrong he refused to accompany them, and, instead, stayed in the car. Some time later the one

man he knew of the three came running back and told him they almost got busted and that he better split. Defendant protested that he didn't have any money and did not want to be left stranded, so the man gave him a bag which he put in his pocket. The man then ran off across a field and defendant started to hitch-hike to Sparta. As he walked along the road he opened the bag, removed the bills and rolls of coins and threw the bag away. In addition to this money, defendant said he had $6 of his own. Defendant denied that he was all covered with mud when he was picked up, but claimed he only had some mud on his knees as he had tripped a couple of times as he walked in the dark and had fallen. He also explained that the money had dropped out of his pocket accidentally in the police car and had slipped down the side of the seat. Defendant's sister and brother supported his testimony that on the night in question he had left them earlier to go to Sparta to see his wife. They also stated that at that time defendant's head was shaved and he was bald. Two police officers and the complaining witness had previously testified that defendant was not bald.

Defendant contends that the jury's verdict of guilty was based primarily upon the eyewitness identification of one witness. He then cites authorities to the effect that of all the factors that account for convictions of the innocent, the fallibility of the eyewitness identificaion ranks at the top (*People v. Gardner*, 35 Ill.2d 564); that where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed (*People v. Kincy*, 72 Ill.App.2d 419); that where the circumstances can be explained upon a reasonable hypothesis consistent with innocence and leave a reasonable doubt of guilt, a conviction cannot stand (*People v. Magnafichi*, 9 Ill.2d 169); and that if a conviction is to be sustained, it must rest upon the strength of the People's case, not on the weakness of the defendant's case. *People v. Coulson*, 13 Ill.2d 290. ■■■ We recognize and accept the principles espoused in each of these cases, but we fail to see their applicability to the facts before us. This is not a conviction based solely on an identification by one eyewitness Rather there is very strong and substantial corroborative evidence directly linking defendant with the burglary. Not only was he apprehended shortly after the crime, and close by, but he was wearing the same clothing described by the complaining witness; he was covered with mud as one might well have been had he slipped and scrambled across a wet, freshly plowed field; he had in his possession a packet of bills and rolled coins identical with those described as having been taken in the burglary; and, finally, there was his effort to dispose of the coins in the police car. The weight to be given identification testimony is for

the jury to determine together with all the other circumstances of the case. (*People v. Oswald*, 2 Ill.2d 567.) And although an accused may seek to explain his presence in the area for an innocent purpose, the choice of which witness is telling the truth is for the trier of the fact. (*People v. Pelkola*, 19 Ill.2d 156.) Here, the identification of defendant by the complaining witness was just one facet of a whole series of incriminating evidence which overwhelmingly points to defendant's guilt beyond a reasonable doubt. To contend that defendant's explanation offers a reasonable hypothesis consistent with innocence is illogical. After all, neither the jury, nor this court on review, is required to conjure up such hypotheses and disregard the inferences that flow normally from the evidence presented. *People v. Kelley*, 29 Ill.2d 53.

At the beginning of defendant's cross-examination he stated that he was known by both of his given names and was sometimes called either Larry or David. When asked if he were known by any other names he replied that he was called Sweet Larry, Mr. Larry, brother, boy, friend, partner, uncle, couz and some others he could not then think of. He denied ever being known as Jabowsky. Defendant contends that the intent of such cross-examination and a later mention of such names in the State's final argument was to create a criminal image of him in the minds of the jury and to cause them to believe him to be a bad, cruel or evil person, and likely, therefore, to be guilty of the crime charged. We cannot accept this reasoning. We see nothing in said names from which it could be inferred that defendant had a prior criminal record or that he was of dubious character. It is true that they add nothing in proof of the issue being tried and that they would have been better left unsaid. However, since they import no evil and were mainly volunteered by defendant, we find them to be without prejudicial effect.

■■ Finally, the defendant calls attention to the final argument of the State wherein the prosecutor referred to the fact that defendant did not produce his wife as a witness to confirm his testimony that she had telephoned him about 8:00 o'clock on the night of the burglary and had asked him to come to Sparta. He argues that such comment constitutes reversible error as an accused has no duty to produce a witness who is equally accessible to the State. (*People v. Rubin*, 366 Ill. 195; *People v. Smith*, 74 Ill.App.2d 458; *People v. Pearson*, 2 Ill.App.3d 861; *People v. Bitakis*, 8 Ill.App.3d 103; *People v. Pepper*, 2 Ill.App.3d 621.) The theory behind these cases it that to permit such comment conflicts with the doctrine of presumption of innocence and places a burden on the accused which the law does not require. In effect, the State, having the sole burden of proof, cannot substitute the failure of a defendant to produce a witness as substantial proof of the charge. Here we cannot

understand why the State chose to comment on the failure of defendant to produce his wife. It is clear that other than her call to defendant to come to Sparta she had no knowledge of or connection with the burglary. Defendant and his brother and sister all testified as to the call, and, presumably, it furnished a reason for defendant to be on the road to Sparta. However, it neither adds to nor detracts from the overwhelming proof of defendant's guilt, *viz.*, his identification, his muddy clothes, his possession of the stolen money and his attempt to conceal some of it. We therefore find that though the prosecutor's comment was improper it was not on a material matter nor was it of sufficient gravity to affect defendant's right to be presumed innocent until proven guilty beyond a reasonable doubt before a fair and impartial jury.

■■ We further note that defendant's counsel did not object to the final argument. Thus in the absence of unusual circumstances he is barred from raising the objection now.

■■ Since the sentence does not comply with the new Unified Code of Corrections, Ill. Rev. Stat. 1973, ch. 38, sec. 1001 *et seq.* we reduce the minimum from two years to one year and eight months.

The judgment of the Circuit Court of St. Clair County is affirmed as modified.

Modified and affirmed.

G. MORAN, P. J., and EBERSPACHER, J., concur.