THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN FRANKLIN, Defendant-Appellant.

First District (1st Division)    No. 78-1989

Opinion filed March 9, 1981.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Jim Veldman, and Edward M. Rubin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from the circuit court of Cook County, wherein the defendant, John Franklin, was convicted of the crime of rape, after a jury trial. The trial court sentenced the defendant to a term of not less than 10 nor more than 30 years in the custody of the Department of Corrections.

The issues presented to review are: (1) whether the trial court erred in allowing into evidence two statements of the defendant made to police; (2) whether the trial court erred in barring certain items of defendant's testimony; and (3) whether the prosecutor's comments regarding defendant's failure to call certain witnesses denied defendant a fair trial. Defendant has also filed a pro se brief in which he raises numerous additional issues.

The defendant was charged with rape and deviate sexual assault. He was convicted of raping Ms. Vivian Parrow on September 29, 1977, and acquitted of deviate sexual assault.

Prior to his trial the defendant moved to suppress certain statements made by him at the time of his arrest. The defendant admitted making a

statement to the police prior to the reading of his rights, when he was informed he was being taken into custody for rape. The trial judge ruled that the voluntary statements made prior to the giving of the warnings were admissible. The court then told the prosecutor that if he intended to introduce any other statements into evidence he should state as such, for purposes of the motion to suppress. His answer was that the only statement he sought to introduce was made prior to the giving of the warnings.

The first witness to testify at trial was the complainant, Ms. Vivian Parrow. Ms. Parrow was a 23-year-old married woman. She testified that on September 29, 1977, she visited her mother's house until about 2:30 a.m. After leaving, she walked to 39th and King Drive, in Chicago. She boarded a bus there and got off on 47th Street. She transferred buses and got off about one and one half blocks from her home, which was located at 4947 South Federal Street.

While she walked toward her home, Ms. Parrow heard footsteps behind her. She described the footsteps as "coming faster and faster." Suddenly, from behind, a man put a knife to her neck, and said if she cried out he would cut her throat. Ms. Parrow, who was six months pregnant at the time, begged her attacker not to harm her or the baby. The man led her away with his left hand. He took the scarf she was wearing and placed it over her eyes.

The man took her through a series of parking lots. While walking on one of the parking lots, Ms. Parrow fell on her back. The man continued to hold the knife to her throat as he unzipped his pants and forced her to engage in fellatio. He then pulled her pants off one leg and started to remove her panties. He then forced her to engage in sexual intercourse. Soon after this occurred, the police arrived. They helped Ms. Parrow to her feet and took her to Billings Hospital. She noticed that she suffered a bruise to the middle part of her back. There was a stipulation that a swab specimen taken from her vagina on the morning of September 29, 1977, revealed spermatozoa indicative of the presence of semen.

The next witness to testify for the State was an officer of the Chicago Police Department. On the morning of September 29, 1977, he was a patrolman. While at 55th and Indiana Avenue, the officer received a radio communique to proceed to the housing project on South Federal Street. The officer entered a parking lot which was about three quarters full. Seeing nothing unusual in the lot, he drove through a second lot. He soon arrived at a lot opposite 4845 South Federal Street, where he observed a head which appeared above the hood of a car. He saw two persons, one kneeling in a crouched position and the other, a woman, on the ground. The officer noticed that the woman's legs were spread and her pants were

pulled down over her right leg. The man was kneeling over the woman and had something in his hand, which was pointed at the woman's throat. When the officers announced their office the man dropped the object he was holding. As the officer moved toward the two individuals the man adjusted his pants. After identifying the defendant as the man he saw kneeling over the woman, the officer testified that he found a knife at the spot where he saw the defendant drop the object which he had pointed to the woman's throat. On cross-examination the officer said Ms. Parrow had not told him the defendant forced her to engage in fellatio.

The defendant then testified in his own behalf. He admitted being convicted of murder in 1964. He said that on September 29, 1977, he saw Ms. Parrow while driving southbound on State Street, and she began waving to him. He said that he was returning from a visit with his sister in Chicago Heights. The defendant said he had met Ms. Parrow twice previously. The first time he met her was in June at 47th Street and Indiana Avenue, where he spent the rest of the day with her. He said that his next contact with her was in July when she telephoned him. He asked her to go with him to the "69" Club, but she said that she did not have anything to wear. The defendant then bought her a two-piece suit from Goldblatt's Department Store for about $34. He was then asked what his salary was at the time. The assistant State's Attorney objected to the question's relevancy, but the court overruled the objection. The defendant said he delivered the clothes to her that Saturday when he again met her at 47th Street and Indiana Avenue. He said that he then took her to visit a friend of his named Bernard Vance.

When the defendant saw Ms. Parrow on September 29, 1977, he pulled his car into a lot and came over to speak with her. The defendant said he asked to walk her home. As they were walking, he asked her if she felt like having sex. She replied that she was not in the mood. The defendant then took out a $20 bill and asked her if that would take care of it. He said he then placed the money in her hand. The defendant said that as Ms. Parrow took the money she dropped a knife, which he then picked up and put in his pocket. He testified that Ms. Parrow did not want to go to his car to have sex, so he began to fondle and kiss her while they were in the parking lot.

The defendant denied they engaged in fellatio. He also denied having intercourse with her because he could not get an erection. He denied holding a knife on her or putting a scarf over her eyes. The defendant was then asked where he was working when he got paid that week and what he did for a living. However, the court sustained objections to all of those questions. The defendant then testified that Ms. Parrow called him while he was receiving mental treatment, subsequent to his arrest. She identified

herself as Vivian and they talked for about five minutes. The defendant said Ms. Parrow asked him for money, and if paid, she would come to court and "tell the truth."

On cross-examination, the defendant said he did not realize Ms. Parrow was pregnant. He said he did not want to take her to a hotel and that she declined to return to his car to have sex. He denied telling the police that he had done wrong, but rather said he told them, "I had been arrested before." He also denied telling the police that he had been contemplating doing this for three months. The defendant then testified that while at the scene of the occurrence the officer said he was taking the defendant in for rape and he replied that this was not a rape. He said that if anything they could only charge him with attempt rape, but that he didn't even do that. He said he was then pushed into the squad car and advised of his rights.

In rebuttal, the officer was recalled to the witness stand and testified as to two statements made by the defendant. The officer testified that the defendant said, "I've done wrong" when he was arrested. The officer further testified that the defendant said, "I was contemplating doing this for three months." The officer testified that the defendant said nothing to him about knowing Ms. Parrow previously, and that the defendant did not inform him that he gave Ms. Parrow $20 in exchange for sex.

Ms. Parrow also testified during rebuttal and denied knowing the defendant prior to the incident. She further denied placing a telephone call to the defendant while he was at the mental health facility. She said that the knife found by the officer after her attack did not belong to her. She also said that she did not accept $20 from the defendant in exchange for sex.

Following closing arguments, the trial judge instructed the jury on the law, and the jury retired to deliberate. They returned and announced their verdicts, which were guilty on the charge of rape and not guilty on the charge of deviate sexual assault. The trial court then sentenced the defendant to a term of not less than 10 nor more than 30 years in the custody of the Department of Corrections. The defendant now appeals his conviction for rape.

The defendant claims the trial court erred in allowing into evidence two statements made by the defendant to the police.

The general propriety of the introduction of the statements in question arose at a pretrial motion to suppress statements, wherein the trial judge denied the motion with regards to a spontaneous statement made before the officers could warn the defendant of his constitutional rights. Because of the defendant's concern about other alleged statements, the trial judge questioned the assistant State's Attorney as to his intent to use

additional statements, to which he replied he did not. Nothing further occurred regarding the motion, as to the two additional statements in question.

It is apparent from the record the remark of the assistant State's Attorney, that the only statement he sought to introduce was the one made before the defendant was given any warnings, was made in the context of the hearing on defendant's motion to suppress.

It is also apparent that the issue regarding this remark is effected by the United States Supreme Court opinion in the case of *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643. There, the court held that even statements which were obtained in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, could be used for impeachment purposes if the defendant took the stand and testified in a manner contrary to his earlier statements (see also *Oregon v. Hass* (1975), 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215). The court held that this procedure would not undermine the deterrent effect of the exclusionary rule and determined that sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case-in-chief. *Harris*, 401 U.S. 222, 225, 28 L. Ed. 2d 1, 4, 91 S.Ct. 643, 645.

Under *Harris*, even if the statements in question were uttered in violation of the defendant's rights as established by the court in *Miranda* they still could have been used to impeach the defendant. After the defendant Franklin testified the assistant State's Attorney properly brought the defendant's inconsistent statements to the jury's attention.

The defendant cites *People v. Cooper* (1979), 66 Ill. App. 3d 205, 383 N.E.2d 768, in support of his argument regarding the introduction of the two statements. In *Cooper* the defendant was promised that a prior conviction would not be used to impeach him, yet after the defendant testified the trial court changed its ruling. However, in *Cooper* it was clear that the only possible use of the conviction was for impeachment. There, the defendant had advance knowledge that he would not be subject to impeachment by his prior conviction if he decided to take the witness stand. In the case at bar the statements in question might have been used in the State's case-in-chief, besides their possible use as an impeachment devise on rebuttal. This difference renders the court's ruling in *Cooper* inapplicable to the facts of the instant case. There was no way the trial court below or the assistant State's Attorney could have known during the motion to suppress that the defendant would choose to testify, and testify contrary to his prior statements.

Because of the above reasons, the trial court properly allowed the use of the defendant's prior statements for the purposes of impeachment.

The defendant also argues the trial court erred in barring certain items of the defendant's testimony. The defendant was prohibited from

testifying that the complaining witness' mother had demanded $6,000 from him in exchange for her daughter coming to court and telling "the truth." The defendant was also prohibited from testifying as to his occupation and, in regard to a prior murder conviction, that he was incarcerated at Menard Psychiatric Division (hereinafter called "Menard"). When the defendant testified he was living with his wife, an objection by the State was sustained by the court.

The defendant contends the court erred in failing to allow him to testify about a sum of money demanded by Ms. Parrow's mother prior to trial. The court excluded this testimony because it required statements from a witness not before the court, that being Ms. Parrow's mother.

Defense counsel did not confront Ms. Parrow with these questions while she was being cross-examined. Instead, counsel waited for the defendant to testify before bringing the statements out.

The trial court allowed the defendant to testify regarding his alleged telephone conversation with Ms. Parrow subsequent to the incident, wherein he testified Ms. Parrow asked him for "the money." However, the court granted the State's objection when the defendant was asked about a prior conversation between himself and Ms. Parrow's mother, wherein she allegedly implicated her daughter and stated a specific amount of money demanded, allegedly $6,000.

■■ The law in Illinois is that when one's motion or intent is in issue, that person's declarations with respect thereto may ordinarily be shown (see *Sloma v. Pfluger* (1970), 125 Ill. App. 2d 347, 261 N.E.2d 323). Thus, where the statement is offered to show only the state of mind of a person at a given time it should be admitted, with appropriate instructions.

■■ The defendant claims Ms. Parrow's mother called him and demanded $6,000 in exchange for her daughter coming to court and telling "the truth." The defendant then claims Ms. Parrow called him at a later date and asked if he had "the money." The argument advanced by the defendant is that Ms. Parrow's conversation with him referred to the money demanded by her mother, which exhibited Ms. Parrows' intent. However, in view of the overwhelming nature of the evidence against the defendant, and in view of the fact that he chose not to cross-examine Ms. Parrow on this issue, we view the error, if any existed, as harmless. The testimony of Ms. Parrow is clear and convincing. The presence of a knife at the scene and a scarf on her head, together with the defendant's admitted statement that he could only be charged with attempt rape, and the other evidence conflict with his story of prostitution and extortion.

The defendant also claims the trial court erred in not allowing him to testify that, with regard to his prior murder conviction, he was incarcerated at Menard.

The defendant points out that the State had won a pretrial ruling that

the defendant's previous murder conviction could be introduced and he argues he should have been permitted to testify as to his placement in Menard, in order to overcome the prejudicial effect of his murder conviction. Defendant cites *People v. DeHoyos* (1976), 64 Ill. 2d 128, 355 N.E.2d 19, as authority for his argument. *DeHoyos* held that a witness may bring out a prior conviction on direct examination, because this is not the impeachment of one's own witness but is instead an anticipatory disclosure designed to reduce the prejudicial effect of the evidence on the witness' credibility. *DeHoyos*, however, does not uphold the defendant's argument that he has the right to support his credibility on direct as if he had been impeached.

■■ Prohibiting a witness from supporting his own credibility until he has been impeached is a practical proscription, and is a fair one considering that rehabilitation of a witness is allowed on redirect after impeachment.

■■ The admission of evidence is a matter largely within the discretion of the trial court, and its decision should not be reversed unless such discretion is clearly abused. (See *Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.) Upon review of the record we cannot find such abuse, considering the slight probative value of defendant's answer as to Menard when weighed against the overwhelming nature of the evidence against the defendant, and particularly considering that the record shows defense counsel made no attempt to rehabilitate the defendant on redirect examination after he was actually impeached on cross-examination with the prior conviction.

The defendant claims that the denial of an opportunity to bolster his credibility by revealing basic facts of his lifestyle denied him a fair trial. The questions at issue concerned the place of his employment and the fact that he resided with his wife.

The record reveals that defense counsel did not ask the basic questions as to the defendant's lifestyle at the start of defendant's testimony but rather while the defendant was testifying about his actions just prior to the time Ms. Parrow said she was raped by the defendant. In view of the overwhelming nature of the facts in the record we view the error, if any existed, regarding the denial of the defendant's attempt to reveal his place of employment and living arrangement, as harmless.

The defendant argues that the prosecutor's closing argument to the jury regarding defendant's failure to call corroborating witnesses denied him a fair trial. The State claims the alleged improper statements were a legitimate subject of comment and, in the alternative, if error existed it was harmless, since they did not substantially prejudice the defendant in view of the overwhelming nature of the evidence against him.

In his testimony the defendant testified that Mr. Robert Nelson went with him to Chicago Heights on the night of the incident. The defendant

said he dropped Nelson off at 69th and State Street prior to meeting Ms. Parrow. In the defendant's version of the events, he was returning from this trip down State Street when he saw Ms. Parrow. The defendant also testified that Mr. Bernard Vance saw Ms. Parrow with the defendant during one of the meetings he had with Ms. Parrow prior to the incident. According to the defendant, it was during one of those meetings that he took Ms. Parrow to Vance's home. This testimony is in direct conflict with the testimony of Ms. Parrow who said she never saw the defendant before the incident. The defendant called neither Nelson nor Vance as his witness, and the prosecutor commented to the jury on that fact.

■■ Generally, it is not appropriate for a prosecutor to comment on a defendant's failure to call witnesses who are equally accessible to both parties. (See *People v. Rubin* (1937), 366 Ill. 195, 7 N.E. 890; *People v. Smith* (1966), 74 Ill. App. 2d 458, 221 N.E.2d 68; *People v. Pearson* (1972), 2 Ill. App. 3d 861, 277 N.E.2d 544; *People v. Pepper* (1971), 2 Ill. App. 3d 621, 276 N.E.2d 416.) The theory behind these cases is that to permit such comment conflicts with the doctrine of the presumption of innocence and places a burden on the accused which the law does not require. The State cannot substitute the failure of a defendant to produce a witness as substantial proof of the charge. In the case at bar, the State could have proven its case without commenting on the defendant's failure to produce witnesses. It was error to make such a comment. However, as we have previously discussed, the nature of the evidence against the defendant was overwhelming. In view of the overwhelming nature of the evidence against the defendant we view the prosecutor's comments as harmless See *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904; *People v. Nelson* (1974), 16 Ill. App. 3d 976, 307 N.E.2d 165.

In addition to the briefs filed by defendant's attorney, the defendant has filed an additional pro se brief, and raised numerous issues which were not argued by his attorney on appeal. The issues raised by the defendant in his pro se brief are: (1) whether the jury verdicts finding the defendant guilty of rape and not guilty of deviate sexual assault were inconsistent verdicts; (2) whether the State denied the defendant a fair trial by knowingly submitting perjured testimony to the jury; (3) whether the State denied the defendant a fair trial by not calling as a witness the arresting officer who testified at the preliminary hearing; (4) whether the State proved the defendant's guilt beyond a reasonable doubt; (5) whether the defendant was denied a fair trial by the prosecutor's allegedly inflammatory closing argument; (6) whether the defendant was denied a fair trial for allegedly not being present when the jury instructions were tendered; and (7) whether the defendant was denied his right to remain silent because of comments of the prosecutor that the defendant had not initially told police of giving Ms. Parrow $20.

We have carefully reviewed the contentions made by the defendant in his pro se brief, and have determined that they are either; (1) not reflective of the record; (2) not reflective of the law in Illinois; (3) not presented in the defendant's motion for a new trial; or (4) harmless, in view of the overwhelming nature of the evidence against the defendant. Upon examining the entire record, we find no reason to disturb the trial court's determination.

For the above and foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.